**Richard GALVEZ, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 03–96–00560–CR.**

Court of Appeals of Texas, Austin.

Jan. 23, 1998.

**204**

Don Morehart, Austin, for Appellant.

Ronald Earle, District Attorney, C. Bryan Case, Jr., Assistant District Attorney, Philip A. Nelson, Jr., Assistant District Attorney, Austin, for State.

Before POWERS, ABOUSSIE and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

After pleading not guilty, Richard Galvez was convicted of two counts of aggravated robbery; the jury also found that he used or exhibited a deadly weapon. *See* Tex. Penal Code Ann. § 29.02, .03 (West 1994). The trial court sentenced appellant to serve concurrent sentences of thirty-two years' imprisonment in the Texas Department of Criminal Justice—Institutional Division. On appeal, Galvez complains the trial court erred in admitting evidence that he was a member of the Fourth Street Brothers, a gang that operated in the neighborhood where the robbery occurred. Finding error, we will reverse the trial court's judgment.

### BACKGROUND

On a Sunday night in April 1996, Orlando Ugarte and Eduardo Perez began an evening of drinking beer and cruising around in Ugarte's car. After stopping to eat dinner and drink more beer, they got back in the car about 10:00 p.m. and continued to drive around the neighborhood. Around 11:00 p.m. they pulled into an all-night filling station to get gas. As Perez was making a call from a nearby pay phone, Ugarte was attacked and robbed by a group of young Hispanic males. When he realized his cousin was under attack, Perez attempted to come to Ugarte's defense, scaring away some of the attackers. However, a group member wielding a gun called for them to return and within minutes Perez was beaten too. Almost as soon as it started, the beating rendered Perez unable to observe his attackers. After administering a severe beating to both victims, the five to eight attackers took Ugarte's wallet and watch, along with Perez's bracelet, and drove off in Ugarte's car, which was later dumped in Town Lake.

Ugarte was attacked so suddenly he could not identify any of his assailants. There

were no witnesses who stepped forward to testify and upon its recovery from the lake the car offered no physical clues connecting appellant to the offense. Eight days after the attack, Perez identified Galvez in a photo array as the attacker who carried the gun, the self-styled leader of the others. At trial Perez was less certain of appellant's identity as one of the assailants. Although he admitted it was unlikely he would be able to recognize any of his attackers, he did agree that Galvez might have been the gun-wielding leader. Essentially, Perez was able to testify that the attackers were a group of Hispanic men, all dressed in similar clothing—short pants and short-sleeved shirts—and all sporting the same short haircut. Perez also stated he believed the group that attacked him was a gang.

Over defense objections, the State presented evidence that Galvez was a member of the Fourth Street Brothers, a gang that operated in the neighborhood where the filling station was located. The State argued that such evidence made it more likely that appellant assaulted and robbed the two victims. In a single point of error, appellant complains that the admission of this evidence constituted reversible error.

## ANALYSIS

■ Galvez argues that evidence of his membership in the Fourth Street Brothers gang should have been excluded under the "propensity rule" set forth in Texas Rules of Criminal Evidence 404. Section (a) generally excludes evidence of a person's character or character trait offered to prove character conformity, with limited exceptions. Tex. R.Crim. Evid. 404(a). Section (b) provides:

**Other Crimes, Wrongs, or Acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, prepa-

ration, plan, knowledge, identity, or absence of mistake or accident....

Tex.R.Crim. Evid. 404(b). Such extraneous evidence that serves any one of the listed purposes is only "relevant" beyond its tendency to prove the person acted in conformity with the evidence presented. *Montgomery v. State,* 810 S.W.2d 372, 387 (Tex.Crim. App.1991) (op. on reh'g). Unless such evidence is relevant apart from supporting an inference of "character conformity," it is absolutely inadmissible under Rule 404(b). *Id.* Evidence of other crimes, wrongs or acts must be excluded unless it qualifies as an exception "admissible for other purposes." *Id.;* Tex.R.Crim. Evid. 404(b).

■ The State attempts to argue the gang evidence was admitted for the purpose of "identifying" appellant and was thereby admissible as an exception under Rule 404(b). We disagree. Evidence of an extraneous act admitted for the purpose of proving identity must demonstrate an extremely high degree of similarity to the charged offense. *Bishop v. State,* 869 S.W.2d 342, 346 (Tex.Crim.App.1993); *see also Lane v. State,* 933 S.W.2d 504, 518–19 (Tex.Crim.App.1996) ("To be admissible to show identity, an extraneous offense must be so similar to the offense charged that the offenses are marked as the accused's handiwork"). Evidence of Galvez's gang membership does not constitute an act or wrong highly similar to the crime charged. The State responds that "gang" evidence is not subject to the restrictions of signature or *modus operandi* crimes because the proffered evidence was not an extraneous offense or bad act but rather was a status or trait tending to prove Galvez's identity. But Rule 404 bars use of such "status" evidence to prove that the accused acted in conformity with the character trait presented. *See* Tex.R.Crim. Evid. 404(a), (b); *Montgomery,* 810 S.W.2d at 387.[1]

■ Evidence of bad character may distract the jury from considering whether the accused is guilty of the crime charged and

---

1. Indeed, evidence of gang membership is admissible at the punishment phase of a trial *because* it is relevant to the character of the convicted defendant. *See Jones v. State,* 944 S.W.2d 642, 652–53 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997); *Anderson v. State,* 901 S.W.2d 946, 950 (Tex. Crim.App.1995); *see also* Tex.R.Crim. Evid. 404(c).

tempt it to convict an individual for general bad behavior. The court of criminal appeals has recognized this rationale for Rule 404. "It is a rule which ensures that a person is tried for the offense he has allegedly committed, and not for the type of person that he is." *Mayes v. State*, 816 S.W.2d 79, 86 (Tex. Crim.App.1991). The court also emphasized the extremely prejudicial nature of such evidence: "Evidence of a defendant's bad character traits possesses such a devastating impact on a jury's rational disposition towards other evidence, and is such poor evidence of guilt, that an independent mandatory rule was created expressly for its exclusion." *Id.* In *Mayes*, an inmate was charged with aggravated kidnaping of a guard; over objection the trial court allowed the State to tell the jury that the inmate was kept in "administrative segregation," an area designated for the troublemakers, "the bad guys, the ones that misbehave." *Id.* at 81. The court of criminal appeals found this kind of "background" contextual evidence inadmissible, distinguishing it from "same transaction" contextual evidence which may be admissible as an exception under Rule 404(b). *Id.* at 86–89. The court noted the logical implication the State hoped the jury would draw from this background evidence: That this inmate posed a threat to guards and other inmates, that he was volatile or violent by nature. Because evidence of his violent nature might have encouraged the jury to conclude that the inmate violently attacked the prison guard, it was highly prejudicial and should have been excluded under Rule 404(a), (b). *See id.* at 88.[2]

This Court has held inadmissible background evidence of the defendant's homosexuality when a male defendant was accused of molesting a male child. *Blakeney v. State*, 911 S.W.2d 508, 515 (Tex.App.—Austin 1995, no pet.) (citing Tex.R.Crim. Evid. 404). In *Roberts v. State*, any evidence that the defendant was a known drug dealer would have been inadmissible if not for defendant's failure to preserve error. 866 S.W.2d 773, 775 (Tex.App.—Houston [1st Dist.] 1993, pet. ref'd). Additionally in *Nelms v. State*, evidence that the defendant wore a beeper, a known practice of drug dealers, was inadmissible under Rule 404. 834 S.W.2d 110, 114 (Tex.App.—Houston [1st Dist.] 1992, pet. ref'd). "This evidence invited the jury to convict appellant of possession [of drugs] because he was a drug dealer in general." *Id.* We find the rationale for excluding character evidence in those cases dictates exclusion of evidence of appellant's gang membership in the instant case.

Galvez states the evidence alleging that he was a member of the Fourth Street Brothers gang showed him to possess the same kind of bad character trait as the evidence that Mayes was a violent and volatile inmate who had to be segregated from the rest of the prison population. Indeed, the State offered the testimony to show that because Perez believed he was attacked by youths belonging to a gang, the evidence that Galvez was a member of a gang from that neighborhood made it more likely that he committed the offense. The State argues in its brief: "His membership in a particular gang augmented the probative force that the physical description and tentative identification provided. It is simply a matter of probabilities." However, gang membership is highly inflammatory character evidence likely to cause an individual to be convicted for being a bad person apart from sufficient indicia of guilt regarding this particular crime. "Appellant, as a member of [a gang], showed a propensity for violence and this character trait made it more probable that he would commit murder.... [T]his would clearly constitute impermissible use of character evidence under Tex.R.Crim. Evid. 404(a)." *Perez v. State*, 830 S.W.2d 684, 688 (Tex.App.—Corpus Christi 1992, no pet.).

■ Although the State argues that the evidence was admissible to prove identity, there was no evidence that the Fourth Street Brothers was the "gang" that attacked Perez and his cousin. Perez could not testify to any identifying tattoos, particular colors, or gang idioms. In other cases, evidence of

---

2. The court found that the error in *Mayes* was nevertheless harmless under Texas Rule of Appellate Procedure 81(b)(2) because the same evidence was admitted without objection later in the trial. *Mayes v. State*, 816 S.W.2d 79, 88–89 (Tex.Crim.App.1991).

gang membership and gang colors and practices has been admitted to show *motive* to harm a member of a rival gang, *see Stern v. State,* 922 S.W.2d 282, 286–87 (Tex.App.—Fort Worth 1996, pet. ref'd), or *bias* toward a member of the same gang, *see McKnight v. State,* 874 S.W.2d 745, 747 (Tex.App.—Fort Worth 1994, no pet.). Neither exception applies to the circumstances of this case. We agree with appellant that membership in a gang that has terrorized a neighborhood, a gang whose members are often arrested for criminal behavior, is the kind of character evidence that might tempt a jury to convict the accused even without sufficient proof of guilt in the offense charged. A trial court has broad discretion in admitting or excluding evidence, and only when the court abuses its discretion should an appellate court conclude that the ruling was erroneous. *See Montgomery,* 810 S.W.2d at 390–91. We hold that the trial court abused its discretion in admitting this highly prejudicial evidence of gang membership over appellant's objection.

▮ We must now consider the State's alternative argument that if there was error, the admission of evidence of Galvez's gang membership did not constitute reversible error. Tex.R.App. P. 44.2 (formerly Tex. R.App. P. 81(b)(2)).[3] After examining the record we note the paucity of evidence connecting Galvez to this crime other than Perez's tentative identification of appellant; after some prodding at trial Perez could only state that Galvez looked a little like the guy with the gun. Indeed, the fact that Perez had been drinking heavily, combined with the surprise nature of the attack that diminished Perez's ability to observe his assailants, understandably contributed to Perez's tentative identification of appellant. Here, substantially the same evidence did not come in later without objection, as it did in *Mayes. See* 816 S.W.2d at 88–89. In light of this record, and the highly prejudicial nature of the character evidence at issue here, we conclude the error affected appellant's substantial rights. *See* Tex.R.App. P. 44.2(b). The potential for evidence of bad character to impress the jury in some irrational but indelible way is great. *See Montgomery,* 810 S.W.2d at 390. We sustain appellant's sole point of error.

We reverse the judgment of the trial court and remand the cause for a new trial.

---

**3.** Although the former and current rules differ somewhat, the court of criminal appeals has applied the current "harmless error" rule regardless of when the case was tried or notice of appeal was given. *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997).