In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00256-CR
______________________________


JEFFERY JOHNSON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the County Court at Law
Bowie County, Texas
Trial Court No. 03M1621-CCL


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

          Appellant, Jeffery Johnson, has filed with this Court a motion to dismiss his appeal. 
As authorized by Tex. R. App. P. 42.2, we grant his motion.
          Accordingly, we dismiss the appeal.    
 
                                                                           Donald R. Ross
                                                                           Justice

Date Submitted:      January 21, 2004
Date Decided:         January 22, 2004

Do Not Publish



1.         Did the trial court preclude Barlow from cross-examining witnesses concerning their
gang affiliation and was that error?

            To understand this issue, an explanation of the sequence of events is necessary. Before trial,
Barlow moved to depose two State witnesses, Gilbreath and Ward. A pretrial hearing was
conducted, at which time Barlow urged that these witnesses were accomplices. The trial court
denied the motion to depose the witnesses, stating that the witnesses could invoke their Fifth
Amendment rights. No issue is raised as to whether the court erred in denying the depositions.
            After the jury was selected, but before presentation of evidence, the State presented a motion
in limine to prevent Barlow from presenting character evidence in the form of alleged gang
membership or affiliation by any witness. Barlow argued that such activity was intended to show
that witnesses Gilbreath, Dillinger, Miller, and Ward were part of a conspiracy. The trial court
granted the motion in limine, but stated, if the court was shown the proper authority, it would revisit
the issue. The court further stated that the motion in limine simply meant the parties should
approach the bench and conduct a hearing outside the presence of the jury. 
            The next morning, Barlow requested the court to reconsider its ruling. Barlow argued that
"this is a Sixth Amendment issue." Barlow argued that the testimony of these four witnesses and
their actions had been to protect the organization and themselves. The court once again stated,
"[W]e're still at the limine stage. There's no evidence before the Court at all to be able to consider
. . . . Let's get into the evidence and find out where it falls and see if something comes up that
changes it." Further, the court stated that it was satisfied with its ruling on the motion in limine and
"[i]f I hear something different, you know, that may change." 
            The State's evidence was presented, including witnesses Gilbreath, Ward, Dillinger, and
Miller. Barlow did not attempt to cross-examine any of the witnesses on the issue of gang affiliation
or activity. Neither did Barlow request that a bill of exception be made outside the presence of the
jury on those issues. Barlow did not attempt to proffer any testimony from any of the four witnesses. 
See Tex. R. Evid. 103(a)(2). Barlow now complains he was prevented from cross-examining the
witnesses by the rulings of the court.
            We do not believe this issue has been preserved for appeal. The granting of a pretrial motion
in limine does not preserve the error. For an error to be preserved with regard to the subject matter
of a motion in limine, it is absolutely necessary that an objection be made at the time the subject is
raised during trial. Wilkerson v. State, 881 S.W.2d 321, 326 (Tex. Crim. App. 1994) (citing
Gonzalez v. State, 685 S.W.2d 47, 50 (Tex. Crim. App. 1985)). Here, the court never ruled on the
admissibility of cross-examination of the State's witnesses concerning gang affiliation. The issue
was never presented to the court after it granted the State's motion in limine. The trial court stated
on several occasions that the motion was an in limine motion only, that it did not have any evidence
to consider, and that it would reconsider its rulings after hearing the evidence and if additional
authorities were cited. The trial court was never presented with evidence to consider in determining
whether cross-examination of these witnesses was proper and never excluded any proffered
evidence.  See Garcia v. State, 106 S.W.3d 854, 857 (Tex. App.—Houston [1st Dist.] 2003, pet.
ref'd), cert. denied, 541 U.S. 1013 (2004) (citing Wilkerson v. State, 881 S.W.2d 321, 326 (Tex.
Crim. App. 1994)) (a ruling granting a motion in limine does not preserve error on appeal); Wilson
v. State, 44 S.W.3d 602, 606 (Tex. App.—Fort Worth 2001, pet. ref'd); McClelland v. State,
No. 06-97-00018-CR, 1997 Tex. App. LEXIS 5729 (Tex. App.—Texarkana Oct. 31, 1997, no pet.)
(not designated for publication). A ruling on a motion in limine that excludes evidence "is subject
to reconsideration throughout trial" and in order "to preserve error an offer of the evidence must be
made at trial." Warner v. State, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998). The trial court did not
commit error on this matter. 
            2.         Did the court err in excluding the testimony of Jessica Vith concerning the gang
affiliation of the witnesses?

            At the close of the State's testimony, Barlow presented, outside the presence of the jury, the
testimony of Jessica Vith. She testified that she was familiar with Dillinger, Miller, Barlow, and
Gilbreath and that "[t]hey were, at the time I was around, trying to get into the organization, the
Aryan Circle." She further testified that she accompanied Miller and Dillinger to a national meeting
of the Aryan Circle and that Gilbreath was also present. She also thought Ward was a member. She
further stated she observed the members tell untruths in order to protect the image of the
organization ("They've lied for each other to family members, other friends outside of that. They've
protected one another.") This evidence was offered by Barlow "for the purposes of the record." The
trial court ruled that the evidence was inadmissible and that the probative value was outweighed by
the prejudicial effect. 
            The evidence that a witness and the defendant are in the same gang has been held to bear on
the witness' veracity and bias. United States v. Abel, 469 U.S. 45, 48–49 (1984) (Mills, a witness,
and respondent's membership in the Aryan brotherhood support the inference that Mills' testimony
was slanted or perhaps fabricated in respondent's favor.) 
            Some courts of appeals in Texas have also considered this issue. In McKnight v. State, 874
S.W.2d 745, 747 (Tex. App.—Fort Worth 1994, no pet.), the Fort Worth court stated:
In Abel, the Supreme Court held that the government could impeach a defense
witness by showing that both the defendant and the witness were members of the
Aryan Brotherhood, and that members were sworn to lie on behalf of each other. 
Abel, 105 S.Ct. at 465. Common membership of a witness and a party in an
organization, even without proof that the witness or party has personally adopted its
tenets, is probative of bias. Id. at 469. Therefore, evidence of McKnight's and
Anderson's membership in the gang was properly admitted if it was admitted for the
limited purpose of showing bias. 

Id. Therefore, in certain situations, evidence of gang association may be relevant. Tex. R. Evid.
401.
            However, the evidence proposed in this case has some significant factual differences. In all
of the cases cited to us, the witness was impeached with evidence that the witness and the defendant
had common membership in an association whose members were sworn to lie on behalf of each
other and, therefore, the testimony would demonstrate a bias in the witness' testimony on behalf of
his fellow member. In this case, the rationale for evidence proposed was that the four testifying
witnesses (Dillinger, Gilbreath, Miller, and Ward) were all members of a common gang, considered
themselves brothers, and would lie for each other. However, the testimony also showed that Barlow
was a member of the same gang. Utilizing this reasoning, Barlow also was a brother and, if the
witnesses were biased by a common gang membership, Barlow would be one of the members that
other members would try to protect—even if it meant lying. Here, their actions were completely to
the contrary. The witnesses testified Barlow admitted and bragged that he had killed Norris. 
Logically, it cannot be argued that, if these witnesses were biased due to gang membership, they
would lie for each other, but would abandon another fellow member, Barlow. The facts here contrast
with cases in which a witness supported the position of a defendant fellow gang member on trial
such as in McKnight (McKnight's and Anderson's membership in the gang was sufficiently probative
of Anderson's possible bias in favor of McKnight to warrant its admission into evidence). 
            We hold that, under these circumstances, this evidence of gang membership is not relevant. 
"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is
of consequence to the determination of the action more probable or less probable than it would be
without the evidence." Tex. R. Evid. 401. It cannot be said that this evidence would make it more
or less probable that the witnesses were biased. On the one hand, it could be argued the witnesses
would be biased on behalf of each other, but it is illogical that the same gang membership and beliefs
would cause them to take a completely inconsistent position and not support another member,
Barlow. The net result is that evidence of gang membership is not, in this instance, instructive
concerning the bias of the witnesses. In determining whether evidence is relevant, courts look to the
purpose for offering the evidence and whether there is a direct or logical connection between the
offered evidence and the proposition to be proved. Pope v. State, 161 S.W.3d 114, 123 (Tex.
App.—Fort Worth 2004, no pet.) (citing Reed v. State, 59 S.W.3d 278, 281 (Tex. App.—Fort Worth
2001, pet. ref'd). The only purpose for allowing the gang membership testimony was to show bias. 
When the underpinning of the bias is removed, the testimony merely shows that these four witnesses
were members of a gang—evidence which is highly prejudicial.
            Even if the evidence has some relevance, Rule 403 mandates that a trial court determine if
the "probative value is substantially outweighed by the danger of unfair prejudice." Tex. R. Evid.
403. Evidence is unfairly prejudicial when it has "an undue tendency to suggest that a decision be
made on an improper basis." Reese v. State, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000). A
Rule 403 analysis by the trial court should include, but is not limited to, the following factors: 
1) how probative is the evidence, 2) the potential of the evidence to impress the jury in some
irrational, but nevertheless indelible way, 3) the time the proponent needs to develop the evidence,
and 4) the proponent's need for the evidence. Id. at 240–41; Montgomery v. State, 810 S.W.2d 372,
389–90 (Tex. Crim. App. 1990) (op. on reh'g).
            In this case, the trial court indicated that the Rule 403 analysis excluded the testimony. In
considering this ruling, we will address the factors that the Texas Court of Criminal Appeals has
announced. 
            1) How probative is the evidence—as is shown in our previous discussion, we believe that
the evidence has little, if any, probative value. The only rationale for the introduction of evidence
of gang affiliation of these four witnesses was to show their bias. In this instance, they testified
against their own gang member. The probative value is extremely low. Further, the evidence was
not clear that they were members of the Aryan Circle, but were "trying to get into the organization." 
            2) The potential of the evidence to impress the jury in some irrational, but nevertheless
indelible way—evidence of membership of the gang is highly prejudicial at the guilt/innocence stage. 
Galvez v. State, 962 S.W.2d 203, 206 (Tex. App.—Austin 1998, pet. ref'd) ("However, gang
membership is highly inflammatory character evidence . . . ."). It is normally admitted for
punishment purposes. Anderson v. State, 901 S.W.2d 946 (Tex. Crim. App. 1995). This factor
would weigh heavily against admitting the evidence. 
            3) The time the proponent needs to develop the evidence—the time required to present the
testimony is relatively brief and would not weigh against its admission. 
            4) The proponent's need for the evidence—there was no similar evidence admitted and,
therefore, this factor would favor admission of the evidence. 
            The trial court's decision is reviewed for an abuse of discretion. The test for abuse of
discretion is not whether, in the opinion of the reviewing court, the facts presented are an appropriate
case for a trial court's action. Rather, it is a question of whether the court acted without any reference
to guiding rules or principles, and the mere fact that a trial court may decide a matter within its
discretionary authority differently than an appellate court does not demonstrate such an abuse. 
Montgomery, 810 S.W.2d at 380. We will not reverse a trial court's ruling on the admission of
evidence as long as the ruling is within the zone of reasonable disagreement.  Id. at 391.
            We find that the trial court was within its discretion in denying the admission of the evidence. 
We affirm the judgment of the trial court.



                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          August 15, 2005
Date Decided:             August 31, 2005

Publish