In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-04-00138-CR
______________________________


JOSHUA BARLOW, Appellant
Â 
V.
Â 
THE STATE OF TEXAS, Appellee


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

On Appeal from the 202nd Judicial District Court
Bowie County, Texas
Trial Court No. 01-F-0602-202


Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

Â Â Â Â Â Â Â Â Â Â Â Â Joshua Barlow was convicted by a jury for the offense of murder. The jury found the
allegation in the enhancement paragraph to be true and assessed Barlow's punishment at confinement
for fifty years. The sufficiency of the evidence is not challenged. 
Â Â Â Â Â Â Â Â Â Â Â Â On August 13, 2001, William Norris was shot and killed. The medical examiner determined
the cause of death was a gunshot wound to the head. Analysis of the fragments on the bullet
determined it was fired from a Ruger 9mm firearm that Clint Gilbreath had given to Barlow on the
day of the murder. Gilbreath testified that Barlow asked to borrow the gun for protection. The gun
was returned to Gilbreath later that same evening. The evidence showed that Barlow told Jason
Dillinger and Denny Ward that he "blew that bitch's brains out." Barlow took Dillinger and Rob
Miller to the scene of the murder, where Norris' body was located. 
Â Â Â Â Â Â Â Â Â Â Â Â Barlow presents two issues, which pertain to the same subjectâthat the trial court precluded
Barlow from cross-examining or allowing Barlow to present extrinsic evidence that four State
witnesses were affiliated with a gang and thus had a potential for bias in their testimony. We affirm
the judgment of the trial court. 
Issues
Â Â Â Â Â Â Â Â Â Â Â Â 1.Â Â Â Â Â Â Â Â Â Did the trial court preclude Barlow from cross-examining witnesses concerning their
gang affiliation and was that error?

Â Â Â Â Â Â Â Â Â Â Â Â To understand this issue, an explanation of the sequence of events is necessary. Before trial,
Barlow moved to depose two State witnesses, Gilbreath and Ward. A pretrial hearing was
conducted, at which time Barlow urged that these witnesses were accomplices. The trial court
denied the motion to depose the witnesses, stating that the witnesses could invoke their Fifth
Amendment rights. No issue is raised as to whether the court erred in denying the depositions.
Â Â Â Â Â Â Â Â Â Â Â Â After the jury was selected, but before presentation of evidence, the State presented a motion
in limine to prevent Barlow from presenting character evidence in the form of alleged gang
membership or affiliation by any witness. Barlow argued that such activity was intended to show
that witnesses Gilbreath, Dillinger, Miller, and Ward were part of a conspiracy. The trial court
granted the motion in limine, but stated, if the court was shown the proper authority, it would revisit
the issue. The court further stated that the motion in limine simply meant the parties should
approach the bench and conduct a hearing outside the presence of the jury. 
Â Â Â Â Â Â Â Â Â Â Â Â The next morning, Barlow requested the court to reconsider its ruling. Barlow argued that
"this is a Sixth Amendment issue." Barlow argued that the testimony of these four witnesses and
their actions had been to protect the organization and themselves. The court once again stated,
"[W]e're still at the limine stage. There's no evidence before the Court at all to be able to consider
. . . . Let's get into the evidence and find out where it falls and see if something comes up that
changes it." Further, the court stated that it was satisfied with its ruling on the motion in limine and
"[i]f I hear something different, you know, that may change." 
Â Â Â Â Â Â Â Â Â Â Â Â The State's evidence was presented, including witnesses Gilbreath, Ward, Dillinger, and
Miller. Barlow did not attempt to cross-examine any of the witnesses on the issue of gang affiliation
or activity. Neither did Barlow request that a bill of exception be made outside the presence of the
jury on those issues. Barlow did not attempt to proffer any testimony from any of the four witnesses. 
See Tex. R. Evid. 103(a)(2). Barlow now complains he was prevented from cross-examining the
witnesses by the rulings of the court.
Â Â Â Â Â Â Â Â Â Â Â Â We do not believe this issue has been preserved for appeal. The granting of a pretrial motion
in limine does not preserve the error. For an error to be preserved with regard to the subject matter
of a motion in limine, it is absolutely necessary that an objection be made at the time the subject is
raised during trial. Wilkerson v. State, 881 S.W.2d 321, 326 (Tex. Crim. App. 1994) (citing
Gonzalez v. State, 685 S.W.2d 47, 50 (Tex. Crim. App. 1985)). Here, the court never ruled on the
admissibility of cross-examination of the State's witnesses concerning gang affiliation. The issue
was never presented to the court after it granted the State's motion in limine. The trial court stated
on several occasions that the motion was an in limine motion only, that it did not have any evidence
to consider, and that it would reconsider its rulings after hearing the evidence and if additional
authorities were cited. The trial court was never presented with evidence to consider in determining
whether cross-examination of these witnesses was proper and never excluded any proffered
evidence. Â See Garcia v. State, 106 S.W.3d 854, 857 (Tex. App.âHouston [1st Dist.] 2003, pet.
ref'd), cert. denied, 541 U.S. 1013 (2004) (citing Wilkerson v. State, 881 S.W.2d 321, 326 (Tex.
Crim. App. 1994)) (a ruling granting a motion in limine does not preserve error on appeal); Wilson
v. State, 44 S.W.3d 602, 606 (Tex. App.âFort Worth 2001, pet. ref'd); McClelland v. State,
No.Â 06-97-00018-CR, 1997 Tex. App. LEXIS 5729 (Tex. App.âTexarkana Oct. 31, 1997, no pet.)
(not designated for publication). A ruling on a motion in limine that excludes evidence "is subject
to reconsideration throughout trial" and in order "to preserve error an offer of the evidence must be
made at trial." Warner v. State, 969 S.W.2d 1, 2 (Tex. Crim. App. 1998). The trial court did not
commit error on this matter. 
Â Â Â Â Â Â Â Â Â Â Â Â 2.Â Â Â Â Â Â Â Â Â Did the court err in excluding the testimony of Jessica Vith concerning the gang
affiliation of the witnesses?

Â Â Â Â Â Â Â Â Â Â Â Â At the close of the State's testimony, Barlow presented, outside the presence of the jury, the
testimony of Jessica Vith. She testified that she was familiar with Dillinger, Miller, Barlow, and
Gilbreath and that "[t]hey were, at the time I was around, trying to get into the organization, the
Aryan Circle." She further testified that she accompanied Miller and Dillinger to a national meeting
of the Aryan Circle and that Gilbreath was also present. She also thought Ward was a member. She
further stated she observed the members tell untruths in order to protect the image of the
organization ("They've lied for each other to family members, other friends outside of that. They've
protected one another.") This evidence was offered by Barlow "for the purposes of the record." The
trial court ruled that the evidence was inadmissible and that the probative value was outweighed by
the prejudicial effect. 
Â Â Â Â Â Â Â Â Â Â Â Â The evidence that a witness and the defendant are in the same gang has been held to bear on
the witness' veracity and bias. United States v. Abel, 469 U.S. 45, 48â49 (1984) (Mills, a witness,
and respondent's membership in the Aryan brotherhood support the inference that Mills' testimony
was slanted or perhaps fabricated in respondent's favor.) 
Â Â Â Â Â Â Â Â Â Â Â Â Some courts of appeals in Texas have also considered this issue. In McKnight v. State, 874
S.W.2d 745, 747 (Tex. App.âFort Worth 1994, no pet.), the Fort Worth court stated:
In Abel, the Supreme Court held that the government could impeach a defense
witness by showing that both the defendant and the witness were members of the
Aryan Brotherhood, and that members were sworn to lie on behalf of each other. 
Abel, 105 S.Ct. at 465. Common membership of a witness and a party in an
organization, even without proof that the witness or party has personally adopted its
tenets, is probative of bias. Id. at 469. Therefore, evidence of McKnight's and
Anderson's membership in the gang was properly admitted if it was admitted for the
limited purpose of showing bias. 

Id. Therefore, in certain situations, evidence of gang association may be relevant. Tex. R. Evid.
401.
Â Â Â Â Â Â Â Â Â Â Â Â However, the evidence proposed in this case has some significant factual differences. In all
of the cases cited to us, the witness was impeached with evidence that the witness and the defendant
had common membership in an association whose members were sworn to lie on behalf of each
other and, therefore, the testimony would demonstrate a bias in the witness' testimony on behalf of
his fellow member. In this case, the rationale for evidence proposed was that the four testifying
witnesses (Dillinger, Gilbreath, Miller, and Ward) were all members of a common gang, considered
themselves brothers, and would lie for each other. However, the testimony also showed that Barlow
was a member of the same gang. Utilizing this reasoning, Barlow also was a brother and, if the
witnesses were biased by a common gang membership, Barlow would be one of the members that
other members would try to protectâeven if it meant lying. Here, their actions were completely to
the contrary. The witnesses testified Barlow admitted and bragged that he had killed Norris. 
Logically, it cannot be argued that, if these witnesses were biased due to gang membership, they
would lie for each other, but would abandon another fellow member, Barlow. The facts here contrast
with cases in which a witness supported the position of a defendant fellow gang member on trial
such as in McKnight (McKnight's and Anderson's membership in the gang was sufficiently probative
of Anderson's possible bias in favor of McKnight to warrant its admission into evidence). 
Â Â Â Â Â Â Â Â Â Â Â Â We hold that, under these circumstances, this evidence of gang membership is not relevant. 
"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is
of consequence to the determination of the action more probable or less probable than it would be
without the evidence." Tex. R. Evid. 401. It cannot be said that this evidence would make it more
or less probable that the witnesses were biased. On the one hand, it could be argued the witnesses
would be biased on behalf of each other, but it is illogical that the same gang membership and beliefs
would cause them to take a completely inconsistent position and not support another member,
Barlow. The net result is that evidence of gang membership is not, in this instance, instructive
concerning the bias of the witnesses. In determining whether evidence is relevant, courts look to the
purpose for offering the evidence and whether there is a direct or logical connection between the
offered evidence and the proposition to be proved. Pope v. State, 161 S.W.3d 114, 123 (Tex.
App.âFort Worth 2004, no pet.) (citing Reed v. State, 59 S.W.3d 278, 281 (Tex. App.âFort Worth
2001, pet. ref'd). The only purpose for allowing the gang membership testimony was to show bias. 
When the underpinning of the bias is removed, the testimony merely shows that these four witnesses
were members of a gangâevidence which is highly prejudicial.
Â Â Â Â Â Â Â Â Â Â Â Â Even if the evidence has some relevance, Rule 403 mandates that a trial court determine if
the "probative value is substantially outweighed by the danger of unfair prejudice." Tex. R. Evid.
403. Evidence is unfairly prejudicial when it has "an undue tendency to suggest that a decision be
made on an improper basis." Reese v. State, 33 S.W.3d 238, 240 (Tex. Crim. App. 2000). A
RuleÂ 403 analysis by the trial court should include, but is not limited to, the following factors: 
1)Â how probative is the evidence, 2) the potential of the evidence to impress the jury in some
irrational, but nevertheless indelible way, 3) the time the proponent needs to develop the evidence,
and 4) the proponent's need for the evidence. Id. at 240â41; Montgomery v. State, 810 S.W.2d 372,
389â90 (Tex. Crim. App. 1990) (op. on reh'g).
Â Â Â Â Â Â Â Â Â Â Â Â In this case, the trial court indicated that the Rule 403 analysis excluded the testimony. In
considering this ruling, we will address the factors that the Texas Court of Criminal Appeals has
announced. 
Â Â Â Â Â Â Â Â Â Â Â Â 1) How probative is the evidenceâas is shown in our previous discussion, we believe that
the evidence has little, if any, probative value. The only rationale for the introduction of evidence
of gang affiliation of these four witnesses was to show their bias. In this instance, they testified
against their own gang member. The probative value is extremely low. Further, the evidence was
not clear that they were members of the Aryan Circle, but were "trying to get into the organization." 
Â Â Â Â Â Â Â Â Â Â Â Â 2) The potential of the evidence to impress the jury in some irrational, but nevertheless
indelible wayâevidence of membership of the gang is highly prejudicial at the guilt/innocence stage. 
Galvez v. State, 962 S.W.2d 203, 206 (Tex. App.âAustin 1998, pet. ref'd) ("However, gang
membership is highly inflammatory character evidenceÂ .Â .Â .Â ."). It is normally admitted for
punishment purposes. Anderson v. State, 901 S.W.2d 946 (Tex. Crim. App. 1995). This factor
would weigh heavily against admitting the evidence. 
Â Â Â Â Â Â Â Â Â Â Â Â 3) The time the proponent needs to develop the evidenceâthe time required to present the
testimony is relatively brief and would not weigh against its admission. 
Â Â Â Â Â Â Â Â Â Â Â Â 4) The proponent's need for the evidenceâthere was no similar evidence admitted and,
therefore, this factor would favor admission of the evidence.Â 
Â Â Â Â Â Â Â Â Â Â Â Â The trial court's decision is reviewed for an abuse of discretion. The test for abuse of
discretion is not whether, in the opinion of the reviewing court, the facts presented are an appropriate
case for a trial court's action. Rather, it is a question of whether the court acted without any reference
to guiding rules or principles, and the mere fact that a trial court may decide a matter within its
discretionary authority differently than an appellate court does not demonstrate such an abuse. 
Montgomery, 810 S.W.2d at 380. We will not reverse a trial court's ruling on the admission of
evidence as long as the ruling is within the zone of reasonable disagreement. Â Id. at 391.
Â Â Â Â Â Â Â Â Â Â Â Â We find that the trial court was within its discretion in denying the admission of the evidence. 
We affirm the judgment of the trial court.



Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Jack Carter
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice
Â 
Date Submitted:Â Â Â Â Â Â Â Â Â Â August 15, 2005
Date Decided:Â Â Â Â Â Â Â Â Â Â Â Â Â August 31, 2005

Publish




STRONG>A. Statutory Requirements 

 Section 54.04(i) of the Texas Family Code requires the juvenile court to make the requisite
determinations in its disposition order regardless of whether there was a jury at the disposition
hearing. See In re J.P., 136 S.W.3d 629, 630-31 (Tex. 2004) (holding under "plain language of the
Family Code" that "if an initial disposition order places a child in [TYC] or on probation outside the
home, it must expressly state that (1)Â removal from the home is in the child's best interests, (2)
reasonable efforts were made to avoid removal, and (3) care and supervision the child needs to meet
the conditions of probation cannot be provided at home"); In re T.A.W., 234 S.W.3d 704, 709-10
(Tex. App.--Houston [14th Dist.] 2007, pet. denied); In re E.C.D., No.Â 04-05-00391-CV, 2007 WL
516137, at *11 & n.14 (Tex. App.--San Antonio Feb. 21, 2007, no pet.) (mem. op.) (holding in
memorandum opinion that under Section 54.04(i), trial court was required to make the three
determinations even though jury had sentenced child to TYC at disposition hearing). (4) In reaching
those determinations, the Texas Supreme Court has recently reminded courts that TYC is, as such
a severe form of incarceration, reserved only for serious juvenile offenders. In re J.P., 136 S.W.3d
629, 632 (Tex. 2004).

 In support of his contentions, counsel directs us to several cases involving intentionally
violent acts by juveniles. In In re A.S., 954 S.W.2d 855 (Tex. App.--El Paso 1997, no pet.), the
court concluded that there was no evidence that the mother could not provide the quality of care and
level of support and supervision that the juveniles needed to meet the conditions of
probation--despite prior (but now ended) gang involvement, and found an abuse of discretion in
sending A.S. to TYC. In In re K.L.C., 972 S.W.2d 203 (Tex. App.--Beaumont 1998, no pet.), a
court reversed a disposition to TYC despite evidence that the juvenile attacked others with a box
cutter--with an extreme school disruption background and evidence that K.L.C.'s parent could not
provide adequate supervision. The court found no evidence to support a finding that "reasonable
efforts were made" to eliminate the need to remove him from the home. (5)

 Nevertheless, after a juvenile has been adjudged to have engaged in delinquent conduct, the
juvenile court has broad discretion to determine a suitable disposition. In re E.F.Z.R., 250 S.W.3d
173, 176 (Tex. App.--El Paso 2008, no pet.); In re C.J.H., 79 S.W.3d 698, 702-03 (Tex. App.--Fort
Worth 2002, no pet.). We will not reverse the juvenile court's findings regarding disposition absent
a clear abuse of discretion. E.F.Z.R., 250 S.W.3d at 176; C.J.H., 79 S.W.3d at 702-03. In
conducting this review, we engage in a two-pronged analysis: (1) did the trial court have sufficient
information upon which to exercise its discretion; and (2) did the trial court err in its application of
discretion? In re M.A.C., 999 S.W.2d 442, 446 (Tex. App.--El Paso 1999, no pet.).

 B. Standard of Review

 The traditional sufficiency of the evidence issues become relevant factors in assessing
whether the trial court abused its discretion. In re A.E.E., 89 S.W.3d 250, 256 (Tex.
App.--Texarkana 2002, no pet.). As to orders of disposition, we will use the civil standard of legal
sufficiency in our consideration of the abuse of discretion standard. In re T.E.G., 222 S.W.3d 677
(Tex. App.--Eastland 2007 no pet.). (6) To determine whether a trial court abused its discretion, we
must decide whether the court acted without reference to any guiding rules or principles; in other
words, whether the act was arbitrary or unreasonable. In re B.N.F., 120 S.W.3d 873, 877 (Tex.
App.--Fort Worth 2003, no pet.). Merely because a trial court has decided a matter within its
discretionary authority in a manner different from how an appellate court would have ruled in a
similar circumstance does not demonstrate an abuse of discretion. Sotelo v. Gonzales, 170 S.W.3d
783, 788 (Tex. App.--El Paso 2005, no pet.). An abuse of discretion does not occur where the trial
court bases its decision on conflicting evidence. B.N.F., 120 S.W.3d at 877. Further, an abuse of
discretion does not occur as long as some evidence of substantive and probative character exists to
support the trial court's decision. Sotelo, 170 S.W.3d at 788.

 C. Evidence of Reasonable Efforts to Prevent Removal from Home

 The evidence relevant to these issues, presented primarily from the juvenile probation officer,
has previously been discussed at length. In summary, there is evidence that A.D. had been using
alcohol (albeit without his parents' knowledge), that he had, with their knowledge, been driving
without a license, and that they had removed him from public schooling in Texas at least in part by
informing the authorities that he would be homeschooled--something they had no intention of
doing. 

 When asked about the family, the probation officer stated that she did not think they provided
enough supervision, they allowed A.D. to drive at age fourteen, did not require that A.D. attend
public school, and the family would find it difficult to comply with the terms of probation because
of what is expected in their community. She acknowledged that A.D.'s parents loved him and they
had attended all sessions and meetings and that it is unusual for a child to have two parents actively
involved in the proceedings. The psychologist who examined A.D. did not recommend confinement
to TYC; alcohol treatment programs were available locally. Further, it is undisputed that A.D. had
never before been referred to the juvenile authorities for alleged violations of the law and that his
parents had been fully cooperative during the entire process. Since A.D. had never been involved
in any juvenile offense, there had been no previous attempt to place him on probation at his home. (7) 
This case was handled in a most expeditious manner at the trial level. (8) After this offense occurred,
there was no opportunity to determine if any form of alternative placement was feasible as A.D. was
placed in confinement shortly after the offense occurred--where he has remained and is currently
confined in TYC. (9) When asked if the family's cooperation with juvenile probation officials was
important in considering placement of the juvenile, the probation officer responded, "I just feel like
the seriousness of this offense warrants a TYC commitment." 

 In its brief, although the State has a section on reasonable efforts to prevent or eliminate the
need for the child's removal from home, it directs us to little to support this requirement. The State
points out that Kennedy testified that A.D. would remain at risk to himself absent treatment for
alcohol abuse in a structured, monitored environment. The State mentions the family's failure to
seek such treatment on its own and reiterates its points concerning the lack of supervision as shown
by not being required to attend school and being allowed to drive without a license. Based on these
factors, the State posits that it is clear the family cannot address A.D.'s treatment needs. The State
concludes that the evidence is legally sufficient "that it was in Appellant's best interest to be placed
in TYC." This is not the question on this portion of the finding; the question is whether there is any
evidence of reasonable efforts made to prevent or eliminate removal of the juvenile from the home. 

 We have discussed the facts relative to A.D.'s home supervision. In considering whether
reasonable efforts were made to eliminate the need to remove the juvenile from his home, the only
other evidence to support the finding is the opinion of the juvenile probation department that such
a placement would not work due to the family's culture. We do not believe this perception
substitutes for factual evidence of some effort to avoid the need for the removal of the juvenile from
the family home. We agree that a serious crime was committed resulting in the death of a young
person. But we must apply the statutes as written, and we are not authorized to modify the
requirements of the law. 

 There is no evidence to show that reasonable efforts were made to prevent or eliminate
removing A.D. from his home. Indeed, there is no evidence any effort was made to avoid removing
A.D. The trial court did not have sufficient evidence upon which to exercise its discretion to find
that reasonable efforts were made to prevent or eliminate removal of A.D. from his home. In making
that finding, the trial court abused its discretion. We sustain point of error number five. 

 Having found error in the disposition order, it is reversed and this cause is remanded for a
new disposition hearing. Tex. Fam. Code Ann. § 56.01(i) (Vernon 2008).




 Jack Carter

 Justice


Date Submitted: April 22, 2009

Date Decided: May 15, 2009



OPINION ON MOTION FOR REHEARING


 While the motion for rehearing raises no meritorious issues, we are compelled to write this
addendum to point out an extremely misleading statement in the motion cited as if it were a
quotation from this Court's opinion. The motion alleges that this Court reasoned that "the only
evidence to support the finding is the opinion of the juvenile probation department that such a
placement would not work due to the family's culture." In fact, the statement was that the only
"other" evidence was the probation officer's opinion. This small omission makes a big difference.

 In our opinion, we reviewed the entire testimony from the trial and surveyed at length
summaries and quotations from the State's witnesses. A.D. had alleged that his constitutional rights
of due process and equal protection were violated because of his religious affiliation, a claim we
found was not asserted at trial and therefore was forfeited. Consequently, it was not necessary to
recite the factual details supporting and resisting that claim. Nevertheless, we set out in great detail
the State's evidence and contentions, and even inserted a footnote stating that such a lengthy
discussion was presented because it pertained to other issues. In section III(C) of our opinion, we
again summarized the State's evidence on this issue and stated that it had "previously been discussed
at length." Our reference to the "only other evidence" was deliberate and intentional as the "other"
evidence consisted of the extensive quotations and summaries of the evidence the State alleged
supported the verdict. The State's motion for rehearing omits this reference to "other evidence" and
suggests that we held the probation officer's opinion was the "only evidence" on the subject. This
erroneous quotation dramatically changes the meaning of the sentence. Both the Texas Lawyer's
Creed ("I will not knowingly misrepresent, mischaracterize, misquote or miscite facts or authorities
to gain an advantage."), (10) and the Texas Standards for Appellate Conduct (11) admonish counsel against
making misrepresentations. We do note that the opinion is quoted correctly in the "Issue" statement
and, therefore, we assume that the erroneous quotation in the body of the motion was not intentional,
but the result of negligence. 

 Further, we did not state, as is quoted in the motion, that Kennedy's testimony allowed "only
one inference." Our reference to the phrase "only one inference" is in a footnote which quotes the
standard for review for legal sufficiency. We credited the State's evidence, including the testimony
of the probation officer and every reasonable inference from that evidence that the State argued
supported the trial court's findings, and disregarded contrary evidence because the contrary evidence
did not lead to only one inference. Even under this test, there was no evidence to support the finding
that reasonable efforts were made to prevent or eliminate removal of the juvenile from the home. 

 Finally, the State appears to abandon the argument that attempts were in fact made to avoid
removal of the juvenile from the home. Instead, the State argues that the evidence is sufficient if the
State proved that attempts to avoid removing the juvenile from his home "were, or would have been,
unreasonable given the family's difficulties . . . ." The statute requires proof that if the court places
a juvenile at the Texas Youth Commission, there must be proof that "reasonable efforts were made
to prevent or eliminate the need for the child's removal from the home." With no citation to
authority, the State effectively argues it does not have to prove the statutory requirements that
reasonable efforts "were made" to avoid removal, but may merely show that efforts to avoid
removing the child "were, or would have been, unreasonable . . . ." The statute is clear; this
argument is unsound. 

 We deny the motion.


 Jack Carter

 Justice


Date: June 5, 2009
1. Tex. Fam. Code Ann. Â§ 54.04(d)(3) (Vernon 2008) (commitment to TYC with possible
transfer to Texas Department of Criminal Justice).
2. The First Amendment to the United States Constitution provides in part, "Congress shall
make no law respecting an establishment of religion, or prohibiting the free exercise thereofÂ .Â .Â .Â ." 
U.S. Const. amend. 1. This provision applies to State action by virtue of the Fourteenth
Amendment to the United States Constitution. Cantwell v. Connecticut, 310 U.S. 296 (1940)
(incorporating free exercise clause); Everson v. Bd. of Educ., 330 U.S. 1 (1947) (incorporating
establishment clause).
3. We have recited the State's evidence in some detail even though we have found this point
was waived, since the evidence is important in deciding other issues in the case. 
4. In re J.G., 195 S.W.3d 161, 187 & n.5 (Tex. App.--San Antonio 2006, no pet.) (holding that
even though jury sentenced juvenile to determinate sentence in TYC, only trial court could make the
three determinations required to be in disposition order under Section 54.04(i)); In re A.W., 147
S.W.3d 632, 636 & n.1 (Tex. App.--San Antonio 2004, no pet.) (same); In re W.D.A., 835 S.W.2d
227, 230 (Tex. App.--Waco 1992, no writ) (reversing and remanding for new jury trial for juvenile's
disposition hearing and stating that if jury found juvenile should be placed on probation outside the
home or committed to TYC, then trial court would have to include the three mandatory
determinations listed in Section 54.04(i) in its disposition order).
5. We also note the citation to In re S.G., No. 04-04-00475-CV, 2005 WL 763277 (Tex.
App.--San Antonio Apr. 6, 2005, no pet.), in which that court decried a sentence to TYC--largely
because it cost too much to locally care for the girl--the "probation resources" were not available
locally.
6. The test for legal sufficiency is "whether the evidence at trial would enable reasonable and
fair-minded people to reach the verdict under review." City of Keller v. Wilson, 168 S.W.3d 802,
827 (Tex. 2005). In making this determination, we credit favorable evidence if a reasonable
fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. Id. So
long as the evidence falls within the zone of reasonable disagreement, we may not substitute our
judgment for that of the fact-finder. Id. at 822. The trier of fact is the sole judge of the credibility
of the witnesses and the weight to give their testimony. Id. at 819. Although we consider the
evidence in a light most favorable to the challenged findings, indulging every reasonable inference
that supports them, we may not disregard evidence that allows only one inference. Id. at 822. 
7. This offense occurred on December 2, 2007. The trial court entered a directive to apprehend
A.D. on December 7, 2007. On December 11, 2007, the first of several detention orders was entered
detaining A.D. in a juvenile detention facility. Other orders detaining A.D. were entered on
December 27, 2007, and January 2, 2008. On January 7, 2008, A.D. entered a plea of true and was
adjudicated. On that date, a jury was selected for the disposition trial. The verdict was returned the
next day. 
8. Unfortunately, the expeditious manner of this trial was not carried forward on appeal. Texas
law requires that when a juvenile has been taken from the custody of his or her parents, that case has
precedence over all other cases. Tex. Fam. Code Ann. Â§ 56.01(h) (Vernon 2008). The court
reporter's record was originally due May 9, 2008, but we granted the reporter an extension until
JuneÂ 9, 2008. The record was not filed and on motion for extension, we ordered the court reporter
on July 24 to file the record by September 15, 2008. We amended that order, based on an allegation
that the court reporter had surgery, and ordered the record filed by September 29, 2008. The record
was still not filed and on December 3, 2008, we ordered the court reporter to appear in our Court and
show cause why she should not be held in contempt of court. On December 8, 2008, the court
reporter's record was filed with this Court. Following that, the briefs were filed, the last being on
March 30, 2009, causing this case to be submitted to us on AprilÂ 22, 2009. This twenty-one-page
opinion was issued on May 15, 2009.

 We acknowledge that some of this delay was due to our leniency in authorizing extensions. 
We do not intend to make that mistake again. We call this requirement of expedited treatment in
these cases to the attention of court reporters and trial courts to warn that this Court will take the
necessary steps to ensure this type delay will not occur in the future. 
9. Many such cases involve juveniles who have previously been unsuccessfully placed on some
form of probation or alternative placement. See, e.g., In re J.L.H., No. 10-08-00126-CV, 2009 Tex.
App. LEXIS 519 (Tex. App.--Waco Jan. 28, 2009, no pet. h.) (mem. op.) (previous offenses, ran
away from placement); In re J.A.S., No. 04-08-00173-CV, 2008 Tex. App. LEXIS 6908 (Tex.
App.--San Antonio Sept. 10, 2008, no pet.) (mem. op.) (additional delinquent conduct, left home);
In re D.L.T., No. 03-06-0069-CV, 2008 Tex. App. LEXIS 5217 (Tex. App.--Austin July 9, 2008,
no pet.) (mem. op.) (unsuccessful foster home placement, additional violations of law); In re A.M.O.,
No. 07-07-0284-CV, 2008 Tex. App. LEXIS 571 (Tex. App.--Amarillo Jan. 25, 2008, no pet.)
(mem. op.) (three-year juvenile delinquency history, new offenses while on probation). 
10. The Texas Lawyer's Creed--A Mandate for Professionalism IV.6 (adopted by the
Supreme Court of Texas and the Texas Court of Criminal Appeals Nov. 7, 1989), reprinted in Texas
Rules of Court 759, 761 (West 2009).
11. Standards for Appellate Conduct, Lawyers' Duties to the Court 3, Texas Rules of
Court 416, 417 (West 2009).