ACCEPTED
05-14-01118-CR
FIFTH COURT OF APPEALS
DALLAS, TEXAS
3/27/2015 12:27:01 PM
LISA MATZ
CLERK

No. 05-14-01118-CR

IN THE

FIFTH COURT OF APPEALS

AT DALLAS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
3/27/2015 12:27:01 PM
LISA MATZ
Clerk

_____

DAVID FRONEK

vs.

THE STATE OF TEXAS

_____

Appealed from the 382nd Judicial District Court, Rockwall County, Texas

_____

BRIEF OF APPELLANT

_____

Ted Sansom

State Bar No. 17642000

P.O. Box 1178

Rockwall, Texas 75087

Attorney for David Fronek

Court appointed on appeal only

ORAL ARGUMENT REQUESTED

No. 05-14-01118-CR

David Fronek, Appellant

Vs.

The State of Texas, Appellee

_____

Identity of Parties and Counsel

_____

Appellant certifies that the following is a complete list of the parties, attorneys and any other person who has any interest in this case:

PARTIES                          COUNSEL

State of Texas                   Kenda Culpepper

Rockwall County District Attorney

1111 E. Yellowjacket Lane, Suite 201

Rockwall, Texas 75087

972-204-6800

Lauren Ellis

Rockwall County Asst. District Attorney

1111 E. Yellowjacket Lane, Suite 201

Rockwall, Texas 75087

972-204-6800

i

| PARTIES | COUNSEL |
|---|---|
| The State of Texas | Felicia Oliphant |
| | Rockwall County Asst. District Attorney |
| | 1111 E. Yellowjacket Lane, Suite 201 |
| | Rockwall, Texas 75087 |
| | 972-204-6800 |
| | |
| | Jeffrey Shell |
| | Rockwall County Asst. District Attorney |
| | 1111 E. Yellowjacket, Lane, Suite 201 |
| | Rockwall, Texas 75087 |
| | 972-204-6800 |
| | |
| Appellant | David Fronek |
| | Presently Incarcerated |
| | |
| Trial Attorney | Tom Novak |
| | 8710 Greenville Avenue |
| | Dallas, Texas 75243 |
| | 214-405-1179 |

i

| PARTIES | COUNSEL |
|---|---|
| Court-appointed attorney on appeal | Ted Sansom |
| | P.O. Box 1178 |
| | Rockwall, Texas 75087 |
| | 972-771-2410 |

# TABLE OF CONTENTS

PAGE

IDENTITY OF PARTIES & COUNSEL ……………………..  i

INDEX OF AUTHORITIES ………………………………..  ii

STATEMENT OF CASE …………………………………  1

STATEMENT REGARDING ORAL ARGUMENT ……….  2

ISSUE PRESENTED …………………………………….  3

STATEMENT OF FACTS ………………………………….  4 - 13

SUMMARY OF THE ARGUMENT ………………………..  14

ARGUMENT ……………………………………………..  15 - 29

CONCLUSION AND PRAYER ……………………………  30

CERTIFICATE OF SERVICE ……………………………  31

CERTIFICATE OF COMPLIANCE…………………………  31

# INDEX OF AUTHORITIES

CASES                                                                 PAGE

Albrecht v. State 486 SW2d 97 …………………………………….. 18

    (Tex. Crim. App. 1972)

Alford v. State 866 SW2d 619 ……………………………………. 17

    (Tex. Crim. App. 1993)

Bachover v. State 633 SW2d 869 …………………………………. 28

    (Tex. Crim. App. 1982)

Billodeaux v. State 277 SW3d 34 ………………………………… 23

    (Tex. Crim. App. 2009)

Carroll v. State 916 SW2d 494 ………………………………….. 23

    (Tex. Crim. App. 1996)

Colvin v. State 54 SW3d 82 …………………………………………28

    (Tex. App. Texarkana, 2001, no pet.)

Conrad v. State 10 SW3d 43 ………………………………………..18

    (Tex. App. Texarkana 1999, no pet.)

Crank v. State 761 SW2d 328 ………………………………………17

    (Tex. Crim. App. 1988)

Davis v. Alaska 415 U.S. 308 (1974) ………………………….… 22, 23

Galvez v. State 962 SW2d 203 …………………………………… 17

    (Tex. App. Austin 1998, pet. ref.)

Garcia v. State 149 SW3d 135 ………………………………….. 23

    (Tex. Crim. App. 2004)

| CASES | PAGE |
|---|---|
| Gigliobianco v. State 210 SW3d 637 ………………………………….28 (Tex. Crim. App. 2006) | |
| Ex Parte Granviel 561 SW2d 503 …………………………………… 15 (Tex. Crim. App. 1978) | |
| Hammer v. State 296 SW3d 555 …………………………………………19, 23 (Tex. Crim. App. 2009) | |
| Hinds v. State 970 SW2d 33 ………………………………………….. 18 (Tex. App. Dallas 1998, pet. ref.) | |
| Hitt v. State 53 SW3d 697 ………………………………………….. 18 (Tex. App. Austin  2001, pet. ref.) | |
| Howland v. State 966 SW2d 98 ……………………………………….18 (Tex. App. Houston 1st Dist. 1998, affirmed other grounds 900 SW2d 274) | |
| Jenkins v. State 993 SW2d 133 ………………………………………...15 (Tex. App. Tyler, 1999, pet. ref.) | |
| Koenler v. State 679 SW2d 6 ………………………………………….23 (Tex. Crim. App. 1984) | |
| Mellinger v. City of Houston  3 S.W. 249 (188)……………………… 28 | |
| Michelson v. United States 335 U.S. 469 (1948) …………………… 17, 27 | |
| Montgomery v. State 810 SW2d 372 ………………………………… 17, 28 (Tex. Crim. App. 1990) | |
| Pawlak v. State 420 SW3d 807 ……………………………………… 18 (Tex. Crim. App. 2013) | |

CASES                                                                                          PAGE

Pointer v. Texas 380 U.S. 400, 85 S.Ct. 1065 ……………………… 22, 28

    12 L.Ed 2d 923 (1965)

Ex Parte Scott 581 SW2d 181 ………………………………………….. 28

    (Tex. Crim. App. 1979)

Strickland v. State 466 U.S. 668, 104 S.Ct. 2052……………………... 20

    80 L.Ed 2nd 674 (1984)

Templin v. State 711 SW2d 30 …………………………………….. 18

    (Tex. Crim. App. 1986)

United States vs. Foskey 636 F.2d 517 …………………………….. 27, 28

    (D.C. Cir. 1980)

Ex Parte Varelas 45 SW3d 627 ……………………………………. 27

    (Tex. Crim. App. 2001)

Wheeler v. State 67 SW3d 879 …………………………………… 19

    (Tex. Crim. App. 2002

STATUTES

Texas Code of Criminal Procedure ……………………………………26

    Section 38.03

Texas Code of Criminal Procedure …………………………………… 6, 10, 11

    Article 38.37, Section 1

Texas Code of Criminal Procedure ……………………………………3, 15

    Article 38.37, Section 2

Texas Penal Code …………………………………………………...... 25

    Section 1.04

STATUTES                                                                PAGE

Texas Penal Code …………………………………………….. 26

  Section 2.01

Texas Penal Code …………………………………………....1,4,5,13,18

  Section 21.02

Texas Penal Code ……………………………………………...5

  Section 21.11

Texas Penal Code …………………………………………….. 4,5

  Section 22.011

Texas Penal Code …………………………………………….. 4,5

  Section 22.021

Texas Rules of Appellate Procedure ………………………….. 29

  44.2(a)

Texas Rules of Evidence…………………………………….… 27

  Rule 105

Texas Rules of Evidence …………………………………………12, 19

  Rule 403

Texas Rules of Evidence …………………………………………16, 18, 23

  Rule 404 & 405

CONSTITUTION                                                             PAGE

Texas Constitution …………………………………………. 20, 22, 28

  Article 1, Section 10, Section 19

United States Constitution …………………………………… 20,22,28

  Fifth, Sixth and Fourteenth Amendment

## STATEMENT OF THE CASE

Appellant was indicted in Rockwall County for the First Degree Felony of Continuous Sex Abuse of Child Younger Than 14 years of age, Texas Penal Code Section 21.02, punishable by sentence of 25-99 years or life.  CR 7

The case was tried before a jury on guilt-innocence and punishment in the 382nd Judicial District Court, Honorable Brett Hall presiding.

The jury returned a verdict of Guilty as charged CR 76 and assessed punishment at 99 (sic).  CR 79

Appellant filed a Motion for New Trial and Motion in Arrest of Judgment 6 days after the date of Judgment CR 88 which were overruled by operation of law.

Notice of Appeal was filed 21 days after date of Judgment CR 96 and the Trial Court certified right of appeal CR 80. Final Judgment was entered Nunc Pro Tunc CR 94, the original judgment having incorrectly designated the Degree of Offense as State Jail Felony and age of victim as 99 years.  CR 81

1

## STATEMENT REGARDING ORAL ARGUMENT

Oral Argument is requested because of severity of punishment and issue raised of constitutionality of statute.

## ISSUE PRESENTED

Texas Code of Criminal Procedure Article 38.37 Section 2 is unconstitutional in its application to the facts of this case, denying Appellant his fair trial and constitutional right to due process, effective assistance of counsel, right of confrontation and compulsory process for obtaining witnesses in his favor.

STATEMENT OF FACTS

Penal Code Section 21.02 sets out the definition of Continuous Sexual Abuse of Young Child:

(a)    "child" has the meaning assigned by Section 22.011(c) i.e. younger than 17 years.

(b)    The offense is committed if (1) during a period that is 30 days or more in duration, a person commits 2 or more acts of sexual abuse ….and (2) at the time each offense was committed, the actor is 17 years of age or older and the victim is younger than 14 years of age.

(c)    Acts of sexual abuse includes a violation:

……

(2)    indecency with a child, Section 21.11 (a)(1)…

(3)    sexual assault Section 22.011.

(4)    aggravated sexual assault Section 22.021 ….

Indecency with a child, Section 21.11(a)(1) (17 years or younger), is committed if a person engages in sexual contact with a child or causes the child to engage in sexual contact, meaning, if done with intent to arouse or gratify the sexual desire of any person, (1) touching any part of the genitals of a child or (2) touching any part of the body of a child with any part of the genitals of a of a person.

Sexual assault under Section 22.011 (relevant parts) includes to intentionally or knowingly… (B) cause penetration of the mouth of a child by the sexual organ

4

of the actor or (C) cause the sexual organ of a child to contact or penetrate the mouth of another person.

Aggravated Sexual Assault, Penal Code Section 22.021 (relevant parts) includes intentionally or knowingly (B)(ii) to cause penetration of the mouth of a child by the sexual organ of the actor or (B)(iii) to cause the sexual organ of a child to contact or penetrate the mouth of another person or (v) to cause the mouth of a child to contact the sexual organ of another person if the child is younger than 14 years of age.

The indictment in this case alleges sexual abuse in four (4) forms: (1) contact of child's mouth with defendant's sexual organ (2) contact of defendant's mouth with child's sexual organ (3) contact of child's sexual organ with defendant's hand and (4) contact of defendant's sexual organ with child's hand.

All four (4) acts alleged would constitute a violation of the Indecency statute, Penal Code 21.11. The 2 mouth-sexual organ contacts would constitute violations of the Sexual Assault statute, Penal Code Section 22.011 although the 2 hand-sexual organ contacts would not. The 2 mouth-sexual organ contacts would also be violations of the Aggravated Sexual Assault offense, Penal Code 22.021 although the 2 hand-sexual organ contacts would not.

The offense alleged, Continuous Sexual Abuse of a Child, Penal Code 21.02 became effective September 1, 2007. Some of the sexual abuse alleged by the State occurred prior to that effective date. The State method of proving the allegations took the form of questioning of the child complainant about school years and grades, combined with the street addresses of the child's residence.

Somewhat conveniently that effective date of the statute coincided with the child's entering the second grade at a time when he was 7 years of age (13 years old at time of trial).

The child complainant testified that inappropriate touching, Defendant's hand on the child's front private part, began at the child's residence in Rockwall from age 4 to age 10.  RR 3 73-74  The child also touched defendant in the same way.  RR 3-79  These kinds of incidents began after the first grade, before second grade (thus age 7, immediately prior to statute enactment and continued until age 8 or 9, possibly 10 years, grade 2 into grade 4)  RR 3-82-83

"It" also happened twice in Arizona, RR 3-84 prompting defense counsel to object to such extraneous offenses.  RR 3-85, 88  The Court ruled the Arizona incidents admissible under Article 38.37 Section 1, T.C.C.P. and the child then testified of hand contact with genitals, both persons on the other and defendant mouth contact to child front private part  RR 3 93-95, all of this in the summer, age 9 or 10 probably 4th grade, between 1-5 times.  RR 3-96-97

Defendant's mouth contact with the child front private part occurred in Rockwall at the residence mentioned, more than 10 times, RR 3-97-99 nightly or at least every other night.  At some point, the defendant made the child's mouth contact defendant's private part RR 3-102, at least 5 times, RR 3-105, this beginning between first and second grade (age 7) RR 3-106, and ending at his age 9 or 10 (third and fourth grades).

Most instances, of the 4 kinds of contact alleged, were defendant's hand on the child's private part, "almost every other night" RR 3-108, but the child hand contact on defendant also occurred "almost every other night."  RR 3-109  The

6

child did not report these incidents out of fear, RR 3-110, but eventually told the forensic examiner although not truthfully on the first interview.  RR 3-111-112

On cross-examination the child testified all incidents involving Appellant were from the time he was in kindergarten (age 5-6 ending Spring of 2006) up to but not including the 5th grade (age 9-10 in 4th grade, school year began September 2009, 2 years after effective date of the statute).  He did often go into his own bedroom after his bath at night, usually he went to Appellant's bedroom at night.  RR 3-161, 165  The child was uncertain about and did not recall precise details of the touching incidents.  RR 3 167-172  At times he denied anything inappropriate was happening.  RR 3-176, 178, 181-182, 184, 192, 195, 199, 201

On further questioning by the Prosecutor, the child testified

1.     In the second grade (school year began around time statute was passed, September 2007), Appellant and the child touched each other's penis.  RR 205-206

2.     In the third grade (began September 2008), Appellant and the child touched each other's penis, normally Appellant touching child.  RR 3-207

3.     In the fourth grade (school year began September 2009, child age 9 years old), Appellant made child put his mouth on Appellant's penis and Appellant and the child continued touching each other's penis.  RR 3 207-208

4.     Nothing further happened during the 5th grade year (began September 2010, 3 years after the statute passed).  RR 3-208

Rockwall police officer Christopher Cleveland testified briefly that Linda Roan, the child's Mother, called in a delayed sexual assault which he responded to and he considered her as the outcry person as she gave him a basic overview of

7

what occurred.  RR 3 217,220  Ms. Roan was not determined to be the first outcry witness in further trial proceedings (not contested here).

Ms. Roan herself testified that the child slept with Appellant beginning at his age 6 ½ -7 years until he was 9 years old, thus for approximately 2 ½ years, at a frequency of about every other day (for 1 year prior to statute, 1½ years subsequent) .  RR 4 6-8  She told Officer Cleveland her suspicions upon being told by F.B. (later to be extraneous offense witness against Appellant) that Appellant had molested him as a child.  RR 4-24-25

She and the child moved from one residence to another in December 2009, about the time the child reached the age of 10 years RR 4-87 and in the 4th grade, and no further incidents occurred with Appellant after that move.  RR 3-137

The child's Father testified that while awaiting trial and in jail Appellant apologized to him for what he did.  RR 4 127, 133  The Father took the apology as an admission of guilt.  RR 3-138 State Exhibit 10, responding.

Janetta Michaels was a forensics interviewer for the Children's Advocacy Center who conducted 2 interviews with the child, on August 8, 2013, and October 24, 2013.  The first interview was not considered satisfactory because of the child's reticence. RR 4 186-187 She testified the abuse occurred when the child was 5, 6, 7, 8 years old, roughly, in the first interview, RR 4-162, although 7, 8, 9 or 10 in the second interview.  RR 4-166  Appellant and the child touched each other, in all 4 ways alleged in the indictment, and it happened very frequently at the Rockwall residence as well as on trips to Arizona.  RR 4-166

Heather Sims of the Dallas Child Advocacy Center, who had no contact with the case or the witnesses, answered general questions related to grooming, reasons

for delayed outcries, stages of disclosure of sexual abuse. details and reasons a child may insist on "don't remember" answers or outright lying

. RR 5 69-71, 80

After court-ordered redactions, portions of the second forensic interview were played for the jury. State Exhibit 9. Appellant's counsel objected as hearsay; the Court ruled admissible as redacted as showing the child's statements to be consistent with his testimony to rebut the express or implied defense in cross-examination that the child was fabricating. RR 5 25-27

The State's last witness at guilt-innocence was F.B., who was 33 years of age at the time and a resident of the State of California. He became acquainted with Appellant in California in 1987 or 1988. RR 5-103 (Child complainant's Mother lived with the witness' Father). The witness, when 7 or 8 years old, usually on weekends, would sometimes go to Appellant's house and sleep there with him in the same bed. RR 5 105-106 Appellant and the witness gave oral sex to each other. Appellant would ejaculate from the oral sex. RR 5 107-108 The two likewise engaged in mutual masturbation when Appellant ejaculated. RR 5 110-112

These acts continued until the witness was 12 or 13, around 1993. RR 5-112 They happened 1-3 times a weekend, in California and sometimes on trips to Nevada or Arizona. RR 5-116

The witness had told a friend and girlfriend when he was "way younger" RR 5-122 and told his Mother, brother, sister and 2 other family members including the child complainant's Mother in the previous year 2013. RR 5 123-124 The 2

9

friends were told of these incidents when he was 15 or 16 (1995-1996) and another friend 3-4 years ago (2010-2011).  RR 5-126

The acts testified to happened possibly hundreds of times RR 5-138.  The witnesses' testimony consists of pages 100-145.  RR 5

The F.B. testimony was a major issue at the trial.  The Trial Court conducted several non-jury discussions regarding it.  Prior to beginning of testimony, a non-jury hearing was begun to initiate determination of admissibility of the F.B. testimony under Article 38.37 T.C.C.P.  RR 2-223  Defense counsel stated an issue of the statute's constitutionality and the Court stated it would hear witnesses before deciding anything under Article 38.37 at which point F.B. was called to present his testimony outside the presence of the jury.  RR 2-224  He testified he was 33 years of age, a resident of California and that Appellant began a relationship with him when the witness was 6 or 7 years old, in Los Angeles County. RR 2-230 F.B. would go to Appellant's residence and sleep there in the same bed with Appellant. RR 2-232  Appellant molested him consisting of mutual masturbation and oral sex RR 2-235-238 to the point of Appellant ejaculating.  These incidents happened in 1986 or 1987 in Arizona, Nevada and California.  F.B. remained silent about these events for 20 years,  RR 2-243 and they ended in 1993 when he was 13 years old. RR 2 244.  On weekends when he was with Appellant, between the ages of 6-13, the incidents happened 1-3 times per weekend, varying.  RR 2-248  Berry told his Alcoholics Anonymous sponsor about these occurrences 2 years previous to the trial testimony,  RR 2-249, and told his Mother the year previous to the trial RR 2-252, and then told the child complainant's Mother.  RR 2-254

Continuing the non-jury hearing, Defense Counsel argued that the evidence did not support a finding by the Trial Court that a jury could find guilt on the

10

offenses testified to beyond a reasonable doubt and that the out-of-state element of the witness and the offenses raised issues of effective assistance of counsel, reasonable opportunity for cross-examination and right to present a defense and denial of due process.  RR 2 258-260 The Prosecutor argued that the State complied with Article 38.37 requirements in giving proper notice to the defense of the extraneous offenses and Defense Counsel had no objection to the notice given. RR 2-261-262

The Trial Court withheld a ruling until it had heard the testimony of the alleged victim.  RR 3-50-51

These proceedings relating to the Berry extraneous offense occupy the appellate record form RR 2-223-278 and  RR 3-5-51, to this point in the trial.

Defense counsel here raised the argument that the statutory requirement that 30-day advance notice be given by the State of all extraneous offenses intended to be offered under Section 1 and Section 2 meant that the determination of admissibility should be done prior to trial so counsel would then know how to prepare for opening statement and trial in general.  The Trial Court found no statutory requirement on timing of the admissibility determination other than prior to introduction of the testimony.  RR 3-50

In between witnesses, the Court again took up Article 38.37 issues related to the witness F.B.  RR 5-6  The Prosecutor argued that Berry testified (non-jury) that Appellant committed the same sexual offenses against him that were committed against the child complainant, i.e. aggravated sexual assaults and indecency by contact offenses as detailed in the indictment and that such offenses against F.B. were proved beyond a reasonable doubt and should be admitted under 38.37 Section 2.  RR 5-7 Defense counsel responded that the offenses were not proved

11

beyond a reasonable doubt i.e. Court could not find that the evidence supported such a jury finding. Further, that the statute denied due process in allowing out-of-state extraneous offenses and that the applicable out-of-state laws were not known and that the out-of-state element denied Appellant effective assistance of counsel. RR 5-10  Further, that Texas Evidence Rule 403 requires a balancing between probative and prejudicial effect and the prejudicial nature of the evidence should preclude admissibility.   RR 5-11 The extraneous offenses were allegedly committed 20 years ago which effectively raised the objection of remoteness. Counsel argued that the statute violated the constitutional prohibition of ex post facto laws and lessened the burden of proving the primary offense beyond a reasonable doubt.  RR 5-12  Further, that a ruling on this issue during the trial prevented counsel from preparing adequately and knowledgeably Appellant's defense for the case.  RR 5-15-16

The Prosecutor responded that the offenses listed in Section 2 did not require proof of guilt under the laws of the State where committed because the offenses would be offenses no matter where committed.  RR 5-19-20

The Trial Court ruled that a hearing during the trial was timely as the Court could not determine the admissibility issue properly without first hearing the content of trial testimony and that any extraneous offense would not be the basis of a conviction on the primary offense.  RR 5-21-22

The Trial Court believed that the statute contained its own balancing test, namely bearing on relevant matters and the requirement of a finding of sufficiency of the evidence to support a jury finding of guilt beyond a reasonable doubt.  RR 5-22 The final ruling was that the Court found that the evidence related to an offense that could be found in Chapter 21 of the Texas Penal Code (Continuous Sexual

12

Abuse of a Child Section 21.02 and Indecency with a Child Section 21.11), that the testimony might be relevant to matters such as the character of the Defendant or any acts performed in conformity with the character of the Defendant and that the evidence would support a jury finding that the separate offense were committed beyond a reasonable doubt. RR 5-24 This portion of the trial proceedings occupies the appellate record from RR 5-6 to 5-25. The Prosecutor in jury argument at guilt-innocence rebuttal stated that the evidence showed the same acts committed against both F.B. and the child, "that it's the same pattern, this is a pattern, this is who he is," RR 5-189, similar to testimony on direct from F.B. that he was testifying to support the child and to show it as a pattern, that the child was not the first and probably wouldn't be the last. "I'm here to show a pattern and it's been going on for a long time." RR 5-130

# SUMMARY OF THE ARGUMENT

Appellant argues that he has been denied a fair trial, denied an opportunity to present a defense to the charges and to the extraneous offenses; denied due process the right of confrontation, right to compulsory process and effective representation of counsel, contrary to the United States Constitution, Fifth, Sixth and Fourteenth Amendments, and Texas Constitution Article I, Sections 10 and 19.

ARGUMENT

Standard of Review for Constitutionality of Statute.  The Court reviews the constitutionality of a statute in light of the presumption of the statute's validity.  It must presume that the Legislature did not act unreasonably or arbitrarily in enacting the statute.  Appellant must show that the statute is unconstitutional.  Ex Parte Granviel 561 SW2d 503 (Tex. Crim. App. 1978); Jenkins v. State 993 SW2d 133 (Tex. App. Tyler, 1999, pet. ref.)

Article 38.37 Texas Code of Criminal Procedure was substantially amended effective September 1, 2013, for any criminal proceeding commencing after its effective date.  Appellant was indicted on February 12, 2014.

The provisions of the law applicable to this appeal are:

Section 1….

Section 2(a). Subsection (b) applies only to the trial of a defendant for:

(1)     an offense under any of the following provisions of the Penal Code:

(A)     Section 20A.02, if punishable as a felony of the first degree under Section 20A.02(b)(1) (Sex Trafficking of a Child);

(B)     Section 21.02 (Continuous Sexual Abuse of Young Child or Children);

(C)     Section 21.11 (Indecency with a Child);

(D)     Section 22.011(a)(2) (Sexual Assault of a Child);

(E)     Sections 22.021(a)(1)(B) and (2) (Aggravated Sexual Assault of a Child);

(F)     Section 33.021 (Online Solicitation of a Minor);

(G)     Section 43.25 (Sexual Performance by a Child); or

(H)     Section 43.26 (Possession or Promotion of Child Pornography), Penal Code; or

15

(2)     an attempt or conspiracy to commit an offense described by Subsection (1)

(b)     Notwithstanding Rules 404 and 405, Texas Rules of Evidence, and subject to Section 2-a, evidence that the defendant has committed a separate offense described by Subsection (a)(1) or (2) may be admitted in the trial of an alleged offense described by Subsection (a)(1) or (2) for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

Section 2-a  Before evidence described by Section 2 may be introduced, the trial judge must:

(1)     determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt; and

(2)     conduct a hearing out of the presence of the jury for that purpose.

Section 3.   The state shall give the defendant notice of the state's intent to introduce in the case in chief evidence described by Section 1 or 2 not later than the 30th day before the date of the defendant's trial.

Section 4.   This article does not limit the admissibility of evidence of extraneous crimes, wrongs, or acts under any other applicable law.

Prior to these 2013 amendments to Article 38.37 the admissibility of extraneous offenses at the guilt-innocence stage of a trial was generally governed by Texas Rule of Evidence 404:

"(a)   Character Evidence Generally. Evidence of a person's character or character trait is not admissible for the purpose of proving action in conformity therewith on a particular occasion …

(b)     Other Crimes, Wrongs, Acts.  Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident, subject to prescribed notice upon request."

The rationale for the general rule of exclusion of a defendant's bad character was not based on irrelevance.  As stated by U.S. Supreme Court Justice Jackson:

16

"Courts that follow the common-law tradition almost unanimously have come to disallow resort by the prosecution to any kind of evidence of a defendant's evil character to establish a probability of his guilt. Not that the law invests the defendant with a presumption of good character, but it simply closes the whole matter of character, disposition and reputation on the prosecution's case-in-chief. The state may not show defendant's prior trouble with the law, specific criminal acts, or ill name among his neighbors, even though such facts might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so over persuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge. The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues, unfair surprise and undue prejudice." <u>Michelson vs. United States</u> 335 U.S. 469 (1948)

Such evidence, sometimes called "propensity evidence," is inherently prejudicial and inflammatory as a matter of law. <u>Montgomery v. State</u> 810 SW2d 372 (Tex. Crim. App. 1990) Evidence of bad character may distract the jury from considering whether the accused is guilty of the crime charged and tempt it to convict an individual for general bad behavior. <u>Galvez v. State</u> 962 SW2d 203 (Tex. App. Austin 1998, pet. ref.)

The defendant has a legal right not to be tried for being a criminal generally. <u>Crank v. State</u> 761 SW2d 328 (Tex. Crim. App. 1988), overruled on other grounds <u>Alford v. State</u> 866 SW2d 619 (Tex. Crim. App. 1993) The law has generally recognized that the exclusion from evidence of extraneous offenses or acts rightly protected an accused from being convicted because he is a "bad person," and that a

17

defendant is entitled to be tried on the accusation in the State's pleadings and not for a collateral crime. Templin v. State 711 SW2d 30 (Tex. Crim. App. 1986); Albrecht v. State 486 SW2d 97 (Tex. Crim. App. 1972)

The 38.37 changes removed the protections and safeguards provided by prior law and which were essentially matters of due process. Under 38.37 Section 2, a separate offense (not other crimes, wrongs or acts as permitted by Section 1) if within the list of offenses given can now be admitted for any bearing the evidence has on relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant. This phrase, together with the prefacing phrase to Section 2(b), "Notwithstanding Rules 404 and 405, Texas Rules of Evidence…" evidence clearly the Legislature's intention to substantially change the law of extraneous offense admissibility in the child sex abuse cases listed in Section 2(a), including the offense in the present case, Continuous Sexual Abuse of Young Child, Penal Code Section 21.02

While the statute expressly abrogates Evidence Rules 404 and 405, cases construing 38.37 have held that the statute likewise supersedes Evidence Rule 402: "All relevant evidence is admissible, except as otherwise provided by the Constitution, by statute, by these rules, or by other rules prescribed pursuant to statutory authority. Evidence which is not relevant is inadmissible." Hinds v. State 970 SW2d 33 (Tex. App. Dallas, 1998, no pet.); Hitt v. State 53 SW3d 697 (Tex. App. Austin 2001, pet. ref.); Conrad v. State 10 SW3d 43 (Tex. App. Texarkana 1999, no pet.); Howland v. State 966 SW2d 98 (Tex. App. Houston 1st Dist. 1998, affirmed other grounds 990 SW2d 274). The rationale is that 38.37 sets its own standard for admissibility and prevails over an evidence rule to the extent of any conflict.

Most cases construing Section 1 of 38.37 have held that Evidence Rule 403 has not been superseded by the statute. That rule provides that relevant evidence may nevertheless be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. Wheeler v. State 67 SW3d 879 (Tex. Crim. App. 2002)

If Rule 403 must still be applied to this issue, nevertheless Rule 403 does not protect the defendant from prejudicial testimony. The testimony must be unfairly prejudicial and a Rule 403 analysis generally favors admissibility and is unfavorable to exclusion. Hammer v. State 296 SW3d 555 (Tex. Crim. App. 2009)

Some discussion in recent cases argue that 38.37 supersedes Rule 403 indirectly or impliedly, as it does Rules 404 and 405 expressly, on the theory that 38.37 sets up its own balancing test for admissibility. The article's wording is open to that interpretation in allowing admission of the extraneous offenses for any bearing the evidence has on relevant matters including character of the defendant and acts performed in conformity therewith. The words "any bearing" seem to exclude a meaning of "any relevance" and allow admissibility without any specified or apparent limitation. The relevance required refers to "relevant matters" and the wording seems to exclude a requirement that the evidence be "relevant" to other relevant matters and simply requires a bearing upon relevant matters and therefore appears to be an unlimited standard without restriction.

It is clear that "Notwithstanding Rules 404 and 405...." eliminates any previous requirement on the prosecution that it present any of the Rule 404(b)

exceptions (motive, opportunity, intent, etc.) in order to avoid the prohibition of character or propensity evidence.

On its face, Article 38.37 eliminates one of the cornerstones of due process universally recognized prior to the statute, and does so directly and specifically. The public policy served by the change is obvious but the conflict with constitutional due process principles is little less so. To advance its determination to punish child sex abuse more severely and effectively, the legislature has impinged on long-established constitutional principles of due process.

Sixth Amendment Right to Counsel

The United States Constitution, Fifth and Sixth and Fourteenth Amendments and Texas Constitution Article I Section 10, grant the right of counsel in all criminal prosecutions and the right extends to reasonably effective assistance of counsel. Strickland v. Washington 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed. 2nd 674 (1984) Any claim that effective assistance of counsel has been denied raises the question of whether the judicial process has been undermined to the extent that the trial cannot be relied on as having produced a just result or a fair trial.

The context of the issue is normally accusatory against counsel, but Appellant here argues that he has been denied effective assistance of counsel by the circumstances through which Article 38.37 has been applied in this case.

Numerous extraneous offenses allegedly committed against the witness F.B. by Appellant were admitted into evidence during the State's case-in-chief under the authority of Article 38.37 Section 2.

The State gave notice of the offenses on July 3, 2014, 31 days in advance of trial (CR 18), and filed amended motions on that same day, (CR 24), on August 1,

20

2014 (CR 47), on August 4, 2014 (CR 55), and on that same day again (CR 59). Some of the offenses listed related to the child complainant and are not relevant to the present point.

The first notice on July 3, 2014, listed 9 sexual abuse allegations regarding Appellant and F.B. between May 6, 1987 and May 6, 1993, in Los Angeles County California and Mohave County, Arizona. (CR 18)

The second notice appears to contain the same offense allegations as the first. (CR 24) The third, fourth and fifth notices did not change the allegations relevant to this point. (CR 47, 55, 59)

In general terms the relevant allegations were that Appellant and F.B. while a child under 14 years of age, engaged in contact or penetration of the mouth of one with the sexual organ of the other, in Los Angeles County, California, contact of the hand of one with the sexual organ of the other, in Los Angeles County, and then repeated the same four (4) offenses as having occurred in Mohave County, Arizona. (CR 17) These same four offenses were likewise alleged in the indictment as having been committed upon the child complainant. CR 7

F.B. remained a California resident at the time of trial (RR 5-101) and was 33 years of age, the allegations therefore having occurred in California and Arizona when he was 6-12 years of age, i.e. 21-27 years prior to trial.

Once the trial judge conducted a non-jury hearing and determined that the evidence likely to be admitted would be adequate to support a jury finding that Appellant committed the separate offenses against F.B. beyond a reasonable doubt, and gave the jury limiting instructions regarding consideration of the evidence, the jury was then free to consider the offenses as they related to the character of the Appellant. In short, through application of 38.37, Section 2 the jury was free to

21

consider the propensity of Appellant to be a child abuser in general and to convict him accordingly, the supporting evidence of which was remote in time and distance.

Trial counsel had no reasonable opportunity to defend against the testimony of these extraneous offenses. The witness had no apparent contacts with the State of Texas other than his appearance at trial. The witness did testify that he had mentioned the offenses to teenage friends and later to his parole officer but those unnamed possible sources of information were not known of by defense counsel prior to the trial testimony and likewise were out-of-state residents.

The Sixth Amendment Right of Confrontation and Cross-Examination was partially satisfied in this case by counsel's opportunity to cross-examine the witness. Under the circumstances of this case, however, counsel had no reasonable access to independent witnesses who might have known facts tending the show the witness's bias or motive in testifying as he did, nor did counsel have reasonable access to any source of information which may have shown the witness had made statements inconsistent with his trial testimony. Sixth Amendment U.S. Constitution, Article I, Section 10, Texas Constitution.

Appellant would be entitled, as a matter of confrontation, to introduce extrinsic evidence bearing on the witness's credibility, motive, bias, inconsistency, if such evidence were available to him; however, the remoteness in time and distance effectively precluded any investigation which might have developed such evidence. That very deprivation likewise precludes him now from describing what the evidence would be. An accused facing a 25-99 year possible sentence should not as a matter of constitutional right be left to wonder at the nature of the defense he would have had at trial to defend against this propensity evidence. Pointer v.

22

Texas 380 U.S. 400, 85 S.Ct. 1065, 12 L.Ed 2d 923 (1965); Davis v. Alaska 415 U.S. 308 (1974); Garcia v. State 149 SW3d 135 (Tex. Crim. App. 2004); Carroll v. State 916 SW2d 494 (Tex. Crim. App. 1996); Hammer, supra; Billodeaux v. State 277 SW3d 34 (Tex. Crim. App. 2009)  Texas Rules of Evidence 404(a)(3), 608, 613 (extrinsic evidence via reputation or opinion testimony)  Koenler v. State 679 SW2d 6 (Tex. Crim. App. 1984)

Reputation or opinion evidence to impeach or confront an adverse witness is not reasonably available to the defense if the witnesses to such are not known at the time of trial and not available if known because residents of California.  Article 38.37 and its application to this case allow this deprivation to the Appellant in this case, while at the same time the State's case is not only limited by the problem but actually enhanced if permitted.

## Compulsory Process

Had counsel somehow been made aware of any favorable witnesses in California he would not have been able to use compulsory process to obtain their testimony, a right otherwise granted to an accused by Article I, Section 10, Texas Constitution.

## Notice of Extraneous Offenses

The notice given by the State to defense counsel the month prior to trial, as required by the statute, stated that the offenses noticed related to F.B. were described as being pursuant to a continuing course of criminal activity, apparently an intention to show that the "activity" constituted the same offense as that alleged in the indictment CR 20-22. Defense counsel raised at the jury charge conference issues complicating this matter.  The result then reached was to eliminate any reference to continuous sexual assault related to the extraneous offenses.  The

23

Texas statute for continuous sexual assault as charged was not in effect during any of the times testified to by F.B. (statute date September 1, 2007, F.B. incidents allegedly from 1987-1993. RR 5 156-160)

## State Criminal Law Applicable

As to the underlying acts described in the State notice, which Appellant concedes are the same acts alleged against Appellant in the case, the question presents itself as to whether they were required to be shown as criminal offenses under the laws of the State of California or Arizona, at the time, or whether the acts allegedly committed in California or Arizona can legally be deemed offenses according to the Texas criminal law at the time. The concept of a California resident violating Texas criminal offense law 21-27 years previously should not be considered valid and would represent a departure from the criminal justice system as we know it.

The Prosecutor argued at one point in the discussions about admissibility that F.B. testified to being raped by the Defendant in Arizona and California, that rape was an offense in all jurisdictions and that the State did not need to prove offenses under California law. RR 5 19-20 If the State is correct on that point, Appellant argues that due process has been denied if acts done in one state can be considered criminal offenses in another state.

If on the other hand, the criminal law of the state where the acts occurred is the measure of the offense, as pointed out by counsel, neither he nor anyone else involved in the case was familiar with the California law on the subject. RR 5-17, 158 (One-half of the extraneous offenses allegedly occurred in a third state, Arizona).

Counsel further argued that if the criminal offense law of another state was the proper standard to apply, the Trial Court could not properly perform its duty of determining that evidence was adequate to support a jury finding that the separate offense was proved beyond a reasonable doubt, as the elements of the crime (assuming a crime did occur) according to California, or Arizona, law were not before the Court. RR 5-9,17-18

The appellate record contains no California or Arizona law on general principles of criminal responsibility such as Chapter 6 of the Texas Penal Code. Further, Section 1.04, Texas Penal Code precludes Texas jurisdiction over an offense committed outside Texas (with exceptions not applicable here). It can be argued that a distinction exists between prosecution of an offense on the one hand and use of an extraneous offense as evidence; it should be recognized however that the F.B. testimony was admitted for jury consideration at the guilt-innocence stage of Appellant's trial and contributed to his conviction and punishment.

Counsel also mentioned that the statute of limitations applicable to the extraneous offenses were relevant to the admissibility question but nevertheless were not known as to the other states, RR 5-9, and the final result was that Appellant had been denied effective assistance of counsel by applying 38.37 and allowing the F.B. extraneous evidence to be admitted. RR 5-10

To comply with the concept of due process the statute should specify what state criminal law should be applied when the acts sought to be admitted did not occur within the State of Texas, including some resolution of whether any statute of limitations should or should not be taken into account in determining admissibility. Admissibility should not be subject to the state law questions presented in this case. Further, considering that courts differ on whether the statute

25

does or does not supersede Evidence Rule 403, because it has its own standard of relevancy and its own balancing test, that question should be clarified by the statute in the same way the statute clarified application of Rules 404 and 405. A related question is whether the words "any bearing" in the article do or do not contain any relevance requirements or limitations. The wording "any bearing" raises more questions as to the meaning of the statute than it answers.

Because Section 1 of Article 38.37 has been effective longer than Section 2, Section 1 has been subject to constitutionality questions in more cases and apparently withstood all. The 2 sections are substantially different in subject matter. Section 1 is limited to extraneous crimes, wrongs or acts committed by the defendant against the child who is the victim of the primary offense.

Section 2 applies to any separate offense committed by the defendant within the specified list of child sex abuse offenses. An act or crime against the child victim in the case will inherently be closer to relevance than will be an offense against another child. Extraneous act evidence under Section 1 is admitted for the purpose of showing the state of mind of the defendant and the child and the previous and subsequent relationship between the defendant and the child. Both purposes are reasonable and logical, and do not depart substantially from prior law because the acts or crimes could usually be shown to come within one or more of the exceptions to exclusion in Rule 404(b) such as motive, intent or opportunity.

Section 2 on the other hand represents a drastic change in the prior law of extraneous offenses in that it eliminates the single most important reason under prior law for excluding the evidence, a reason justified in the strongest language in cases too numerous to count and a reason based primarily on the fundamental fairness required by due process.

Penal Code Section 2.01 and T.C.C.P. 38.03 both mandate a presumption of innocence for an accused. That presumption does not exist to the extent that Article 38.37 allows the jury to consider propensity evidence in the determination of guilt/innocence on the charged offense. Although 38.37 requires a finding that the separate offense be supported by evidence satisfying the beyond reasonable doubt burden of proof, the extraneous offense does not enjoy the same presumption according to the actual wording of the statute.

A limiting instruction is normally given when evidence is admitted for any purpose other than generally, both when the evidence is initially admitted and in the jury charge. The Trial Court properly did so in this case. Texas Evidence Rule 105  RR 5-100, CR 73   The Defense cannot reasonably dispense with the limiting instruction for extraneous offenses and allow limited purpose evidence to be admitted for general purposes.  However, in the present case, the limiting instruction necessarily contains the language of the new law, namely that the extraneous evidence may only be considered on the subject of the defendant's propensity to commit sexual abuse of children. The resulting effect obviously is that the jury is told very specifically that it may consider inflammatory, prejudicial propensity evidence in determining guilt or innocence. Application of 38.37 therefore removes any advantage or strategy otherwise available to the defense from limiting instructions. Ex Parte Varelas 45 SW3d 627 (Tex. Crim. App. 2001) The net effect is a reversal of the purpose of the limiting instruction from protecting the defendant to favor the State instead by telling the jury propensity evidence is now proper and it is permissible to convict the defendant for being a pedophile or criminal generally. Michelson, supra

The overall net effect is that the extraneous offense admissibility denies a defendant a fair opportunity to defend himself against the charged offense. United

27

States v. Foskey 636 F.2d 517 (D.C. Cir. 1980)  The opportunity is denied to an even greater extent when 38.37 allows the extraneous offense to be admitted despite its foreign origin.

Appellant does not present his point as one involving an evidentiary ruling only, however; if the factors stated in Montgomery, supra, were to be applied to this case it requires to be recognized that the State, needing to prove 2 acts of sexual abuse, and having proved "every other night" over a period of 2 years or more, had no need for the extraneous F.B. testimony; it is not open to argument to say that the jury could only have used the F.B. testimony to decide the primary issue in an irrational, emotional way; the time devoted to the F.B. evidence unduly delayed and interfered with the orderly progression of the trial; the evidence of acts 25 years previously to another person had little probative value to the primary issue.  Under the typical analysis of the propriety of extraneous act evidence prior to Article 38.37 it likewise would be observed that acts 25 years in the past were subject to the objection of remoteness, thus decreasing probative value. Gigliobianco vs. State 210 SW3d 637 (Tex. Crim. App. 2006); Colvin v. State 54 SW3d 82 (Tex. App. Texarkana, 2001, no pet.); Bachover v. State 633 SW2d 869 (Tex. Crim. App. 1982) It should be noted that the State's evidence was to the effect that both the child and F.B. had been sexually abused multiple times when the required element was 2 times or more.  The volume of extraneous F.B. offenses is an independent source of objection to that evidence.  Pawlak v. State 420 SW3d 807 (Tex. Crim. App. 2013.

For general application of the constitutional principles dismissed see: Pointer, supra, Ex Parte Scott 581 SW2d 181 (Tex. Crim. App. 1979); Mellinger v. City of Houston 3 S.W. 249 (188)

## Error Analysis

The case presents constitutional issues and error under the Fifth, Sixth and Fourteenth Amendments, U.S. Constitution and Article I, Section10 and Section 19 of the Texas Constitution. The Court of Appeals must reverse under those circumstances unless it determines beyond a reasonable doubt that the error did not contribute to the conviction or punishment. T.R.A.P. 44.2(a)

The case law prior to Article 38.37 made clear that propensity evidence was generally not permitted because it had a direct and substantial inflammatory influence on the jury and therefore would contribute to the conviction. Since the punishment was assessed at 99 years, it is difficult to argue that the propensity evidence did not contribute to the severe punishment.

## CONCLUSION AND PRAYER

In its application to the facts of this case, and especially the issues surrounding the out-of-state element of the extraneous offenses, Article 38.37 has denied Appellant specific and due process constitutional rights and in doing so has deprived him of a fair trial and the right to defend himself. The legislature has not properly addressed the issues presented by the circumstances of this particular case. Appellant requests dismissal, reversal and rendition or reversal and remand.

Respectfully submitted,

*/s/* Ted Sansom

Ted Sansom

P.O. Box 1178

Rockwall, Texas 75087

972-771-2410

FAX 972-771-1946

State Bar No. 17642000

Court-appointed attorney on appeal

for Defendant

## CERTIFICATE OF DELIVERY

I certify that a true and correct copy of the above and foregoing Appellant's Brief was on this 27th day of March 2015, sent by U.S. mail, postage prepaid and properly addressed to the Rockwall County District Attorney.

*/s/* Ted Sansom

## CERTIFICATE OF COMPLIANCE

Relying on the word count function in the Microsoft Word software used to produce Appellant's Brief, I certify that the number of words in this brief is 7137.

*/s/* Ted Sansom